[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 1, 2006
THOMAS K. KAHN
CLERK

No. 05-14285
Non-Argument Calendar
_____

BIA No. A95-903-786

OSCAR MONTOYA MONROY,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                    Respondent-Appellee.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

**(March 1, 2006)**

Before DUBINA, HULL and WILSON, Circuit Judges.

PER CURIAM:

Oscar Montoya Monroy petitions us for review of the Board of Immigration Appeals ("BIA"), affirming the order of the Immigration Judge ("IJ") denying him asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, and Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). On appeal, Monroy argues that he established his eligibility for asylum and withholding of removal by showing that he suffered past persecution based on his political opinion and that he has an objectively reasonable fear of future persecution. Specifically, he argues that he: (1) has had an affiliation with the Liberal Party since he was in college; (2) held many political positions, including Mayor of Montenegro, "director of planning," "manager of Social Security," a Department of Statistics employee, and a Colombian Department for Development employee; (3) presented newspaper clippings showing he was "a genuine victim of threats while holding political posts"; and (4) his family was threatened "[b]ecause he was a militant activist of the Liberal Party." Adding that asylum protects against persecution by uncontrollable non-governmental actors, Monroy argues that he provided credible testimony that he has a reasonable fear of persecution, and the 2001 State Department Country Report on Human Rights Practices in Colombia was objective evidence of the "seriousness of paramilitary influence in Colombia." Monroy

contends that the BIA erred in failing to "consider the record as a whole" and thus abused its discretion in dismissing his appeal and affirming the IJ's conclusion that he was ineligible for asylum, withholding of removal, and CAT relief. Monroy added that the escalating threats he experienced, "culminating with the receipt of a letter of condolences identifying him as an informant," established that it was more likely than not that he would be subjected to torture if returned to Colombia, and therefore, he deserved CAT relief. Finally, Monroy argues that the BIA's decision was based on a single BIA precedent, and its analysis was "woefully inadequate [because] it lack[ed] the adequate consideration of pertinent case law and BIA decisions."

The BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (quotations omitted). "Under this highly deferential standard of review, the IJ's decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." *Sepulveda v. United States Attorney Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005) (per curiam).

An alien who arrives in, or is present in, the United States may apply for asylum. *See* INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has

3

discretion to grant asylum if the alien meets the INA's definition of a "refugee."
*See* INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A).  A "refugee" is defined as:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of *persecution or a well-founded fear of persecution on account of* race, religion, nationality, membership in a particular social group, or *political opinion . . . .*

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (emphasis added).  The asylum applicant carries the burden of proving statutory "refugee" status.  *See Al Najjar*, 257 F.3d at 1284.

To establish asylum eligibility, the petitioner must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, such as political opinion, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution.  8 C.F.R. § 208.13(a), (b); *Al Najjar*, 257 F.3d at 1287.  If the petitioner demonstrate past persecution, they are presumed to have a well-founded fear of future persecution unless the government can rebut this presumption by showing a fundamental change in circumstances in the country or the ability to avoid future persecution by relocating within the country.  8 C.F.R. § 208.13(b)(1)(i).  If the petitioner cannot show past persecution, then they must demonstrate a well-founded fear of future persecution

4

that is both subjectively genuine and objectively reasonable. *See Al Najjar*, 257 F.3d at 1289. The subjective component can be proved "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." *Id*. (quotation omitted).

Although the INA does not expressly define "persecution" for purposes of qualifying as a "refugee," we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation[.]" *Sepulveda*, 401 F.3d at 1231 (quotations omitted). To establish the necessary causal connection between the political opinion and the feared persecution, the alien must present "specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of such an opinion." *Id*. (quotation omitted) (emphasis in original). If an alien is unable to establish eligibility for asylum, he is generally precluded from establishing eligibility for withholding of removal and CAT relief, as the burden of proof is higher. *See Al Najjar*, 257 F.3d at 1292-93, 1303.

In his asylum application, accompanying documents, and testimony, Monroy alleged that he was threatened repeatedly by guerillas on account of his political beliefs, culminating in four major instances, namely: (1) the "condolence" card sent to Monroy containing a death threat; (2) a corrupt ex-congressperson had

5

Monroy's political ally murdered; (3) Monroy was shot on the road from Montenegro to Quimbaya, but was not injured; and (4) a grenade was thrown at his house, destroying the house but sparing his family.

Regarding the death threat, Monroy failed to introduce the condolence card into evidence at the removal hearing. As such, his claim that his life had been threatened was uncorroborated and therefore does not compel the conclusion that Monroy suffered past persecution. *See Sepulveda*, 401 F.3d at 1230 (stating that "the IJ's decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise."). Although Monroy has alleged other verbal threats, these do not constitute "past persecution" because they were "isolated incidents of verbal harassment or intimidation." *See id*. at 1231 (quotation omitted).

Monroy also alleges that an ex-congressperson had Monroy's political ally, Montoya, murdered. Monroy provided only two pieces of corroborating evidence to substantiate this claim: (1) a document from the "Central Clinic of Quindio" stating that Montoya was brought into the emergency room already dead from gunshot wounds; and (2) Montoya's autopsy certificate which contained no information regarding the cause of death. Monroy failed to provide: (1) newspaper clippings reporting the murder; (2) testimonies or affidavits from his older daughter and son-in-law,[1] who lived in Colorado and had been granted asylum

---

[1]Monroy's daughter and Montoya's son are married.

based on the murder; (3) a police report; (4) evidence of his political ties with Montoya; and (5) the corroborating testimony of Monroy's wife and younger daughter, who were present at the hearing. Given this lack of corroborating evidence, Monroy did not show that he suffered past persecution based on this incident. *See Sepulveda*, 401 F.3d at 1230.

Monroy also failed to provide corroborating evidence regarding his claim that he was once shot at while on the road from Montenegro to Quimbaya, or that the incident had any connection to his political beliefs. Accordingly, the evidence does not compel the conclusion that Monroy suffered past persecution based on this event. *See id*.

Monroy did provide evidence that corroborated his account of the explosion that partially destroyed his home. A newspaper clipping, identifying Monroy as a "liberal economist" and a member of the "Liberal Left" who had held several political positions, reported that an "explosive artifact" caused "$100 thousand" worth of damages to Monroy's house but spared the inhabitants. This account is generally consistent with Monroy's asylum application. However, the incident occurred in 1988, approximately 14 years prior to the date on which he filed his asylum application. Thus, the event was too attenuated to be grounds for asylum. Furthermore, despite the likelihood that this event occurred, Monroy did not show that the explosion was due to his political opinion. Therefore, the record does not

7

compel the conclusion that the attack on Monroy's house was causally connected to the persecution he claims to fear. *See Sepulveda*, 401 F.3d at 1231 (stating that "[a]lthough the evidence may [have] permit[ted] a conclusion [that] the restaurant bombing was directed at [the petitioner] on account of her political activity, it [did] not compel such a conclusion").

Upon review of the record and consideration of the parties' briefs, we discern no reversible error. Because substantial evidence supports the BIA's conclusion that Monroy failed to meet his burden of proving past persecution or a well-founded fear of persecution, we deny his petition for review.

**PETITION DENIED.**